# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Marquise Miller, Dekoven Riggens, Richard Osei, Chad Tyler, and CDMR, LLC, an Oklahoma Limited Liability Company<br><br>     Plaintiffs,<br><br>vs.<br><br>First United Bank and Trust Company, an Oklahoma Banking Corporation, d/b/a First United Bank,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No. CIV-22-185<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS AMENDED COMPLAINT

COME NOW Plaintiffs, Marquise Miller, Dekoven Riggens, Richard Osei, Chad Tyler and CDMR, LLC, an Oklahoma Limited Liability Company, and herein amend their Complaint as follows:

1. Plaintiff Marquise Miller is a church minister and community leader with good credit and gainful employment.

2. Plaintiff Dr. Dekoven Riggins is a movie producer with good credit and gainful employment.

3. Plaintiff Dr. Richard Osei is a Professor at Langston University with good credit and is gainfully employed.

4. Plaintiff Chad Tyler is a Certified Public Accountant with good credit and gainful employment.

5. Plaintiff, CDMR, LLC, is an an Oklahoma Limited Liability Company wholly owned and operated by the four individual Plaintiffs. Plaintiffs' are committed to investing in their community in the Oklahoma City vicinity and revitalizing and improving the area for all of its residents.

6. Plaintiffs' through their business entity, CDMR, LLC, applied for financing through Defendant First United Bank, an Oklahoma State Banking Corporation, to purchase an apartment complex at 6600 NW 16th Street, Oklahoma City, Oklahoma ("the Subject Property").

7. Plaintiffs' intended to purchase the Subject Property, invest in its remodeling and revitalization, and rent out the units to families in the community.

8. Defendant First United Bank and Trust Company, doing business as First United Bank, through its Vice President and Community Loan Officer Tyler Wilburn, prepared Plaintiffs' financing.

9. All Plaintiffs' are Black and CDMR, LLC, is an minority owned business entity.

10. All Plaintiffs' are members of a protected class.

11. Defendant never ordered an appraisal after having received a completed loan application on 6600 NW 16th street OKC, OK on behalf of Plaintiffs' completed loan application.

12. Defendant's policy requires that an appraisal be ordered after a completed loan application is submitted to purchase a property.

13. Defendant never ordered an appraisal on 6600 N.W. 16th Street Oklahoma City, OK on behalf of Plaintiffs.'

14. Defendant claims it denied Plaintiffs' loan application.

15. Defendant's discrimination caused Plaintiffs' to sustain significant damages, including the lost income they would have derived from their investment in the Subject Property and the pain and suffering that comes from race-based discrimination.

16. This is an action under federal law alleging a violation of the Equal Credit Opportunity Act ("ECOA"), the Fair Housing Act ("FHA"), and the Civil Rights Act.

17. First United Bank denied the loan in a disparate treatment of non-whites and thereby denied Plaintiffs' rights under the U.S. Const. Title VII.

18. Title VII prohibits discrimination against whites as well as non-whites.

McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 280, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); Taken v. Oklahoma Corp. Comm'n, 125 F.3d 1366, 1368 (10th Cir.1997).

19. Additionally, The McDonnell Douglas Framework is also known as a burden-shifting scheme. "The burden-shifting schemes, developed initially in the federal courts, were an effort to formulate uniform rules for making a prima facie case." Kastanis v. Educational Employees Credit Union, 122 Wn.2d 483,490, 859 P.2d 26 (1993).

20. Plaintiffs' set out a prima facia case against First United Bank as described herein.

21. The burden of proof, under McDonnell Douglas Framework, shifts to Defendant.

22. First United Bank must prove that their acts were non-discriminatory in nature.

23. First United Bank's guidelines to the loan officer as an agent for the corporation, or by the corporate officer's practice, injured Plaintiffs', and others in violation of the act.

## JURISDICTION AND VENUE

24. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C.

§ 1331. This action is brought pursuant to 15 U.S.C. § 1691, et seq.; 42 U.S.C. § 3601, et seq.; and 42 U.S.C. § 1981.

25. Venue is proper in this District under 28 U.S.C. § 1391(b). The

events and omissions giving rise to the claims asserted in this action occurred within the Western District of Oklahoma.

## PARTIES

26. Marquise Miller is a U.S. citizen who at all times relevant resided in Edmond, Oklahoma. Dr. Richard Osei and Dr. Dekoven Riggins both reside in Oklahoma City, Oklahoma. Chad Tyler resides in El Reno, Oklahoma. CDMR, LLC, is wholly owned by the individual plaintiffs in this suit.

27. At all times herein, applicants are Black men, members of a protected class pursuant to Title VII of the Civil Rights Act of 1964.

28. Defendant First United Bank and Trust Company is an Oklahoma Banking Corporation whose registered agent is identified as Spend Life Wisely Company, Inc., located at 1400 W Main, Durant, OK 74701.

29. Defendant at all times relevant did business under the name First United Bank in multiple locations throughout Oklahoma.

30. At all times herein, Defendant was acting as a creditor.

## STATEMENT OF FACTS

31. Plaintiffs' are committed to investing in their community in

Oklahoma City and revitalizing and improving the area for all of its residents. The individual Plaintiffs planned through the Plaintiffs Limited Liability Company, CDMR, LLC, to rent to individuals who were on Section 8, low income assistance, comprised of minorities.

32. Plaintiffs' applied for financing through Defendant First United Bank to purchase an apartment complex at 6600 NW 16th Street, Oklahoma City, Oklahoma.

33. All individual Plaintiffs' were personal guarantors of the loan.

34. Defendants obtained all individual Plaintiffs' Personal Tax returns before pre-qualification was given for the Subject Property.

35. Defendant analyzed the character of each guarantor, which are the individual Plaintiffs', before pre-qualification letter was given.

36. Defendant obtained all individual Plaintiffs' personal credit scores before pre-qualification letter was given.

37. First United Bank analyzed collateral of all of the individual Plaintiffs' before pre-qualification letter was given.

38. First United Bank assessed potential cash flow of Subject Property before pre-qualification was given.

39. The Subject Subject Property is at least a 160-unit apartment complex.

40. All individual Plaintiffs' intended to purchase the Subject Property through their wholly owned business, CDMR, LLC, invest in

its remodeling and revitalization, and rent out the units to families in the community.

41. All individual Plaintiffs' intended to share in the Subject Property's investment returns.

42. All individual Plaintiffs' had a completed loan application.

43. All individual Plaintiffs' put down $5,000 in earnest money to secure the contract on the property.

44. Defendant sent pre-qualification letter for purchase of the Subject Property.

45. The pre-qualification letter to purchase the Subject Property is dated for June 12, 2020.

46. The purchase amount was for $940,000.00 at 4.5 interest rate over a minimum of a 20-year period.

47. The payments would not be more than $7,000.00 a month on this 940,000.00-purchase amount.

48. All individual Plaintiffs' had over a 650-credit score.

49. All individual Plaintiffs' were personal guarantors of the loan.

50. First United Bank requires all mortgage applicants to have at least a 620- credit score.

51. All individual Plaintiffs' had more than $7000.00 a month in

discretionary income to cover debt service.

52. The pre-qualification letter was given to Plaintiffs' for Subject Property, after all individual Plaintiffs' tax returns, financial statements, credit reports, and collateral were analyzed by First United Bank.

53. First United Bank determined that all individual Plaintiffs were qualified to receive financing and sent pre-qualification letter.

54. First United Bank sent pre-qualification letter because they knew all individual Plaintiffs needed the letter in order to submit along with the purchase contract of the Subject Property, 6600 N.W. 16th.

55. Tyler Wilburn of First United Bank communicated in writing to Plaintiff, Chad Tyler, on or about July 21, 2020, "I believe[d] [the financing) is going to work, just updating some information to clean up the memo."

56. First United Bank led Plaintiffs' to believe they would receive the loan for the purchase of the Subject Property, 6600 N.W. 16th street OKC, OK.

57. First United Bank communicated that all Plaintiffs' individual and through their business, CDMR, LLC, were qualified for this loan.

58. Defendant did not contact any Plaintiff with any updates or requests for further information after this email on or about July 21,

2020.

59. By this point, more than 30 days had passed since Plaintiffs' application for financing had been submitted and was complete.

60. By July 27, 2020, Plaintiffs' still had not heard anything from Defendant regarding the status of their financing application.

61. Because so much time had passed with no notification from Defendant regarding the status of the financing application, the Subject Property's seller cancelled the purchase contract with Plaintiffs'.

62. When they received notice of the purchase contract cancellation, Plaintiffs' contacted Defendant to inquire about the status of their financing application.

63. At that time, Defendant informed Plaintiff(s) that they were "suspicious" that Plaintiffs' had access to $200,000.00 to place in a First United Bank Account.

64. Defendant, claimed in writing to have informed a co-applicant verbally that their financing application was denied on July 10, 2020.

65. No record of this purported July 10, 2020 denial exists.

66. First United Bank never communicated with any of the Plaintiffs on July 10, 2020.

67. At no point in time did Defendant ask Plaintiffs' about the source of their liquidity.

68. Rather, Defendant relied on the blatantly discriminatory assumption that it was "suspicious" that four Black men would have access to $200,000.00.

69. Plaintiffs' because of past negative experiences with banks thought they should audio record conversations with First United Bank.

70. Once the seller cancelled Plaintiffs' purchase contract due to Defendant's failure to notify them of the status of their application, the property's seller sold the Subject Property to another buyer.

71. The Equal Credit Opportunity Act requires that a creditor notify any applicant of adverse action within 30 days of receiving a complete credit application.

72. Greg Massey, Chief Executive Officer for First United Bank, communicated in writing to the Oklahoma Banking Commission that Plaintiffs' had a completed loan application on May 16, 2020.

73. Greg Massey of First United Bank wrote, "A review of communications determined the original communication regarding the application occurred on May 6, 2020 by the Account Officer. This communication requested 3 years of tax returns and a personal financial statement, which is what the Bank

deems to be a completed application. The Bank received this information from each guarantor by May 16, 2020." See Exhibit 1

74. Defendant communicates that on July 10, 2020 adverse action notice was given and that on May 16, 2020 Plaintiffs' had a completed loan application.

75. Defendant examined tax returns of plaintiffs' before deciding to issue pre-qualification to purchase the Subject Property.

76. Defendant examined credit report of Plaintiffs' before deciding to issue pre-qualification to purchase the Subject Property.

77. Defendant analyzed the collateral of Plaintiffs' before deciding to approve the purchase of the Subject Property.

78. Defendant decided that Plaintiffs' were qualified for the loan.

79. After First United Bank reviewed the financial records of Plaintiffs,' Defendant sent approval letter to purchase Subject Property at 6600 N.W. 16th Street OKC, OK.

80. First United Bank communicated in writing to the Oklahoma Banking Commission that they provided Plaintiffs' with verbal adverse action notice on July 10, 2020.

81. First United Bank communicated in writing to the Oklahoma Banking Commission that they provided the adverse action notice after

more than 30 days had passed to Plaintiffs'.

82. Defendant was legally required to give an adverse action notice 30 days from May 16, 2020.

83. Defendant's failure to timely notify Plaintiffs' of its decision on their financing application-as well as Defendant's discrimination in denying their financing application-caused Plaintiffs' to suffer significant damages, which continues to persist.

84. Plaintiffs' lost the opportunity to purchase and invest in the Subject Property.

85. We buy houses L.L.C. purchased 6600 N.W. 16th street after First United Bank failed to give financing for the Subject Property.

86. First United Bank has a past relationship with We buy Houses L.L.C.

87. We buy Houses L.L.C. are current customers of First United Bank.

88. We buy Houses L.L.C has done business with First United Bank for at least 7 years.

89. First United Bank Loan number ending in 1399 is one of the multiple loan files between We buy Houses L.L.C and First United Bank.

90. Phone records indicate that First United Bank was in communication with We Buy houses L.L.C days before they

purchased 6600 N.W. 16th in Oklahoma City.

91. This lost purchase and investment opportunity means that Plaintiffs' lost millions of dollars that Plaintiffs' would have collected as a result of revitalizing and renting out the apartments in the Subject Property.

92. First United Bank continued to make loans to other borrowers who had similar qualifications as Plaintiffs.

93. On November 17, 2021 First United Bank made a loan to London Investments L.L.C.

94. London Investments L.L.C., similarly to Plaintiffs', had sufficient collateral to act as a 20 percent down payment for the loan.

95. London Investments L.L.C., similarly to Plaintiffs, had enough discretionary income to service the debt of the loan.

96. London Investments L.L.C., similarly to Plaintiffs,' had a loan to value ratio of at least 75 percent.

97. London Investments L.L.C., similarly to Plaintiffs, had potential cash flow that would service the debt of the loan.

98. London investments was not required to combine sufficient collateral with more than 20 percent down to secure loan through First

United Bank.

99.	First United Bank made a loan to Wheeler Home L.L.C. on July 29, 2021.

100.	Wheeler Home L.L.C had similar qualifications as Plaintiffs.'

101.	Wheeler Home L.L.C met the credit score requirement of having at least a 620 just as Plaintiffs did.

102.	Wheeler Home L.L.C. had similar loan to value similarly to Plaintiffs' of at least 75 percent.

103.	Wheeler Home L.L.C. plan was to use rents from property to help service debt, which was similar to Plaintiffs' plans.

104.	Wheeler Home L.L.C., similarly to Plaintiffs', had sufficient collateral to act as a 20 percent down payment for the loan.

105.	London Investments had similar qualifications as Plaintiffs.'

106.	London Investments is a company owned by non-minorities.

107.	Wheeler Home L.L.C had similar qualification as Plaintiffs'.

108.	Wheeler Home L.L.C is owned by non-minorities.

109.	First United Bank denied these black Plaintiffs the ability to enter into a contract just because of the color of their skin.

## STATEMENT OF CLAIMS
## FOR RELIEF FIRST

## CLAIM FOR RELIEF
## VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT
## (15 U.S.C. § 1691, et seq.)

110. Plaintiffs' hereby incorporate, reassert, and re-allege No.'s 1-109 and every allegation set forth above as if fully set forth herein.

111. The ECOA prohibits discrimination by any creditor of any application with respect to any aspect of a credit transactions on the basis of race.

112. Plaintiffs', Black men, are members of a protected class for purposes of the ECOA.

113. Plaintiffs' applied for a mortgage loan from Defendant, a creditor.

114. Plaintiffs' were qualified for the loan from Defendant: they are gainfully employed, have good credit, and had the liquidity necessary to secure the Subject Property and the loan.

115. Indeed, Defendant pre-qualified Plaintiffs' for the loan.

116. Despite being qualified for the loan, Defendant claims to have denied Plaintiffs' application.

117. Defendant's denial of Plaintiffs' loan application was racially discriminatory because Defendant justified its denial on the basis of the racially charged assumption that it was "suspicious" for Plaintiffs'-Black men-to have access to $200,000.00 in cash.

118.    As a result of Defendant's racial discrimination, Plaintiffs' suffered and continues to suffer substantial damages.

## SECOND CLAIM FOR RELIEF VIOLATION OF THE FAIR HOUSING ACT (15 U.S.C. § 1691, et seq.)

119.    Plaintiffs' hereby incorporate, reassert, and re-allege No.'s 1-119 and every allegation set forth above as if fully set forth herein.

120.    The Fair Housing Act prohibits discrimination on the basis of race for anyone buying a home, getting a mortgage, and engaging in other housing-related activities.

121.    Plaintiffs'- Black men-are members of a protected class for purposes of the ECOA.

122.    Plaintiffs' applied for a mortgage loan from Defendant to enable them to purchase the residential Subject Property.

123.    Plaintiffs' were qualified for the loan from Defendant: Plaintiffs' are gainfully employed, have good credit, and had the liquidity necessary to secure the Subject Property and the loan.

124.    Indeed, Defendant pre-qualified Plaintiffs' for the loan.

125.    Despite being qualified for the loan, Defendant denied Plaintiffs' mortgage application.

126.    Defendant's denial of Plaintiffs' loan application was racially

discriminatory because Defendant justified its denial on the basis of the racially charged assumption that it was "suspicious" for Plaintiffs' -Black men-to have access to $200,000.00 in cash.

127.  As a result of Defendant's racial discrimination, Plaintiffs' suffered and continue to suffer substantial damages.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF THE CIVIL
### RIGHTS ACT
### (42 U.S.C § 1981)

128.  Plaintiffs' hereby incorporate, reassert, and re-allege No.'s 1-127 and every allegation set forth above as if fully set forth herein.

129.  Section 1981 of the Civil Rights Act prohibits discrimination on the basis of race in the making, enforcing, and enjoyment of contracts.

130.  Plaintiffs', Black men, are members of the class protected by Section 1981.

131.  Defendant violated Plaintiffs' right to make, enforce, and enjoy contracts on the same basis as white citizens by delaying a decision on, and ultimately denying the Plaintiff's application for financing to purchase the Subject Property at issue.

132.  As a result of Defendant's racial discrimination, Plaintiffs suffered and continues to suffer substantial damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs' respectfully request that this Court enter judgment in their favor and against Defendant, and award them all relief as allowed by law and equity, including, but not limited to the following:

    a.    Compensatory damages, including but not limited to those for emotional distress and pain and suffering;

    b.    Actual economic damages and consequential damages arising out of Defendant's conduct;

    c.    Pre-judgment and post-judgment interest at the highest lawful rate; and

    d.    Such further relief as justice requires.

Respectfully Submitted,

_____
Michael P. Rogalin, OBA # 7711
Michael Paul Rogalin, Lawyer, P.C.
228 Robert S. Kerr, Suite 950
Oklahoma City, OK  73102
405-236-0509 Telephone
405-319-0025 Facsimile
Lawyer1980@aol.com E-mail
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

    I hereby certify that on the  11  day of  July  2022, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the ECF registrants.

/s/ Michael P. Rogalin<br>
Michael P. Rogalin