# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARQUISE MILLER, DEKOVEN RIGGINS, RICHARD OSEI, and CHAD TYLER, and CDMR, LLC, an Oklahoma Limited Liability Company, )<br><br>Plaintiffs, )<br><br>-vs- )<br><br>FIRST UNITED BANK AND TRUST COMPANY, an Oklahoma Banking Corporation, d/b/a First United Bank, )<br><br>Defendant. ) | Case No. CIV-22-185-F |

## ORDER

Before the court is Defendant's Motion for Attorney Fees, doc. no. 49. The motion was filed on January 25, 2023. The motion is directed against plaintiffs Marquise Miller, Dekoven Riggins, Richard Osei and Chad Tyler, who have repeatedly and unsuccessfully sought to assert claims against the defendant bank, arising from the claimed denial of a completed loan application to finance the purchase of a 160-unit apartment complex in Oklahoma City.

Plaintiffs, appearing *pro se*, filed a complaint alleging credit discrimination claims against First United under the Fair Housing Act (FHA), 42 U.S.C. § 3601, *et seq*., the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691, *et seq*., and the Civil Rights Act of 1866, 42 U.S.C. § 1981. Plaintiffs, who are Black, alleged that the loan application was denied based upon their race. In responding to the

complaint, First United moved to dismiss the FHA claims under Rule 12(b)(6), Fed. R. Civ. P. The court granted the motion and dismissed the FHA claims without prejudice.

Contemporaneous with its Rule 12(b)(6) motion, First United answered the complaint and raised as an affirmative or other defense that plaintiffs were not entitled to the relief they sought as they were not the real party in interest. In the joint status report and discovery plan, First United indicated that the loan application was made by CDMR, LLC (CDMR), and because the limited liability company, rather than plaintiffs, was the loan applicant, plaintiffs were not the real party in interest. First United indicated an intent to seek leave to file an early motion for partial summary judgment to address the real party in interest issue.

A few days later, retained counsel entered an appearance on behalf of plaintiffs and filed a motion, on their behalf, seeking leave to add CDMR as a party plaintiff and to file an amended complaint. Plaintiffs stated the addition of CDMR was necessary because "the loan application guaranteed by the four individual Plaintiffs [was] directed to and made by the entity CDMR, LLC, which is owned by the four individual Plaintiffs." Doc. no. 21, ECF p. 1. First United objected to the motion only to the extent the proposed amended complaint reasserted an FHA claim. Concluding that First United's objection would be more properly addressed in a motion under Rule 12(b)(6), the court granted the relief requested by plaintiffs.

An amended complaint was filed, adding CDMR as a plaintiff, and alleging claims under the FHA, ECOA and § 1981 claims. In response to the amended pleading, First United filed a motion under Rule 12(b)(6) seeking to dismiss the FHA and ECOA claims alleged by plaintiffs and CDMR and the § 1981 claims alleged by plaintiffs. On September 12, 2022, the court entered an order dismissing without prejudice CDMR and plaintiffs' FHA claims and plaintiffs' ECOA claims and

§ 1981 claims. With respect to plaintiffs' ECOA claims, the court found that plaintiffs, who were alleged to be the proposed guarantors of the subject loan, failed to establish their standing to sue under the ECOA. Although the ECOA's implementing regulation, Regulation B at 12 C.F.R. § 1002.1, *et seq*. (and at 12 C.F.R. § 202.1, *et seq*.), included guarantors in the definition of "applicant" under the ECOA, the court concluded that it did so "[f]or purposes of" § 1002.7(d) (and § 202.7(d)) (signature rules). *See*, 12 C.F.R. § 1002.2(e); 12 C.F.R. § 202.2(e). And the court found that the amended complaint did not allege any violation of the signature rules, § 1002.7(d) (or § 202.7(d)), by First United. With the court's ruling, the only remaining claims against First United were CDMR's ECOA and § 1981 claims.

Subsequently, plaintiffs, appearing *pro se*, filed a "Motion to Add Necessary Party." Doc. no. 32. They sought, as individuals, to be added "back into the lawsuit in their individual capacities," arguing that in the Tenth Circuit, the ECOA "extends protections to guarantors." *Id*. at ECF p. 2. In their motion, plaintiffs specifically relied upon a ruling by the United States District Court for the Northern District of Oklahoma in Citgo Petroleum Corp. v. Bulk Petroleum Corp., No. 08-CV-654-TCK-PJC, 2010 WL 3931496 (N.D. Okla. Oct. 5, 2010), and argued that the court must follow that ruling where there is an "intra-circuit conflict." Doc. no. 32, ECF p. 3. Plaintiffs made no reference to the dismissed FHA or § 1981 claims.

Shortly after the filing of the *pro se* motion, retained counsel moved to withdraw his appearance on behalf of plaintiffs and CDMR and moved to extend the scheduling deadlines. The court granted retained counsel leave to withdraw and directed CDMR to secure an entry of appearance by new counsel[1] by a date certain,

---

[1] "Parties who are not natural persons may not appear pro se." LCvR17.1.

advising that failure to comply may result in a dismissal without prejudice of CDMR's action. The court vacated the scheduling order and advised that a new status and scheduling conference would be held after entry of appearance by new counsel for CDMR and the court's resolution of plaintiffs' *pro se* motion.

On the same day as they filed their reply brief in support of their pending *pro se* motion, plaintiffs filed a "Motion to Amend Complaint," seeking leave to file a second amended complaint. Doc. no. 40. Plaintiffs stated that the motion was necessary because the proposed amended pleading "alleges that Former Plaintiffs[] were co-borrowers[] along with CDMR LLC in applying for [the] loan with [First United]." Doc. no. 40, ECF p. 1. They stated that that First United had "made hard inquiries on [their] credit reports which had caused their credit scores to decrease" and had "requested personal financials of each co-borrower and approved the loan based upon the personal financials of each co-borrower." *Id.* at ECF pp. 1 and 2. Plaintiffs did not cite any authority in support of their motion. The proposed second amended complaint realleged the FHA, ECOA, and § 1981 claims.

In an order entered on December 27, 2022, the court denied both of plaintiffs' motions. Doc. no. 44. The court construed the "Motion to Add Necessary Party" as a motion to reconsider the court's September 12, 2022 order dismissing without prejudice plaintiffs' ECOA claims against First United. In denying the motion, the court found no reason to reconsider its order. The court concluded that the Northern District of Oklahoma's ruling in Citgo Petroleum did not have precedential value, but even if the court were to follow the ruling (as persuasive), it would not support a finding that plaintiffs had statutory standing to bring their ECOA claims. The court explained that the plaintiff guarantor in Citgo Petroleum alleged a violation of the signature rules set forth in Regulation B, and the amended complaint did not allege any violation of the signature rules by First United.

As to the "Motion to Amend Complaint," the court denied the motion because plaintiffs were no longer parties to the action as the court was not reconsidering its order, and CDMR had not sought leave to amend the amended complaint on plaintiffs' behalf. The court also denied the motion because the proposed amendment appeared to be in bad faith. The court explained that the proposed amendment directly contradicted the factual allegations made in the amended complaint filed by retained counsel. The amended complaint had alleged that CDMR applied for financing and plaintiffs were to be the personal guarantors of the loan, while the proposed second amended complaint was alleging that the individual plaintiffs were co-borrowers and "along with CDMR [] applied for financing through [First United]." Doc. no. 40-1, ¶ 7. The court also concluded that the proposed second amended complaint appeared to make the complaint "a moving target" because the proposed amended pleading made factual allegations as to matters of which plaintiffs would have been well aware when the amended complaint was filed, but they chose not to advance those allegations until after the court dismissed their claims.

The same day the court denied plaintiffs' motions, the court entered an order dismissing CDMR's amended complaint and action against First United without prejudice under Rule 41(b), Fed. R. Civ. P., for failure to comply with the court's order requiring CDMR to secure an entry of appearance by new counsel. Doc. no. 45. As all claims in the action had been adjudicated, the court entered a judgment, in accordance with Rule 58, Fed. R. Civ. P., that same day (December 27, 2022).

Seven days later, and against that backdrop of consistent unsuccessful litigation, plaintiffs filed a motion requesting the court, pursuant to Rule 59(e), Fed. R. Civ. P., to alter or amend the judgment. They asked the court "to include them in the lawsuit as necessary parties" and "to allow them to amend their complaint to add

all relevant causes of action." Doc. nos. 47 and 52. To make a painfully long story short, that effort was unsuccessful. *See*, Order at doc. no. 58, filed on March 8, 2023.

Meanwhile, the present motion was filed, by which the defendant bank sought to recover attorney fees from the individuals, Messrs. Miller, Riggins, Osei and Tyler.

The bank seeks to recover its attorney fees on two legal bases. First, the bank seeks recovery under 28 U.S.C. § 1927. Section 1927 states as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Section 1927 speaks in terms of the conduct of attorneys, but the court assumes, for present purposes, that § 1927 may also, in a proper case, be applied to a *pro se* litigant. As the bank points out, there is in this circuit substantial authority at the district court level for that proposition. *See*, doc. no. 49, at 3, n. 1. Under § 1927, the focus is on unreasonable and vexatious conduct. The Court of Appeals has told us that this is "an extreme standard," justifying fee shifting "only in instances evidencing a serious … disregard for the orderly process of justice." Baca v. Berry, 830 F.3d 1262, 1268 (10th Cir. 2015) (quoting from AeroTech Inc. v. Estes, 110 F.3d 1523, 1528 (10th Cir. 1997)).

The bank also bases its request for fees on the court's inherent powers, Chambers v. NASCO, Inc., 501 U.S. 32 (1991). In Chambers, 501 U.S. 32 (1991), the Supreme Court made it clear that the district court has the inherent power, independent of any statute or rule, to impose sanctions for serious litigation abuse. The court noted that the various statutes and rules which might be applied to remedy

litigation abuse reach "only certain individuals or conduct," while the inherent power "extends to a full range of litigation abuses." *Id.* at 46. The inherent power does not have only interstitial application, however. In light of plaintiffs' argument, discussed below, that the bank should have proceeded (and can only proceed) under Rule 11, the court notes that the inherent power can "be invoked even if procedural rules exist which sanction the same conduct." *Id.* at 49.

In the exercise of its inherent power, the court must be mindful that, as the Supreme Court cautioned in Degen v. United States, 517 U.S. 820 (1996), the inherent power doctrine is an exercise by the judicial branch in the definition of its own authority. *Id.* at 823. Accordingly, the Court cautioned that a power such as this, the contours of which are defined without the benefit of the usual checks and balances, must be "delimited with care" and used with restraint. *Id.* The court's inherent power encompasses the power to sanction either party misconduct or attorney misconduct, and includes the power to enter a default judgment or a lesser sanction. Chambers at 43-45. *See also*, Millsap v. McDonnell Douglas Corp., 162 F.Supp. 1262 at 1308 (N. D. Okla. 2001).

The Court of Appeals has recognized the district court's "inherent power to impose a variety of sanctions to regulate its docket, promote judicial efficiency and deter frivolous filings." Resolution Trust Corp. v. Dabney, 73 F.3d 262, 267 (10th Cir. 1995). *See also*, to the same effect, Smith v. Northwest Financial Acceptance, Inc., 129 F.3d 1408, 1419 (10th Cir. 1997). Under the court's inherent power, fee shifting is available where a litigant has acted in bad faith, vexatiously, wantonly or for oppressive reasons. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 258-59 (1975).

The plaintiffs' main argument in response to the motion is that the bank should have proceeded under Rule 11 and that, applying Rule 11, the motion should be

denied because the bank failed to comply with the safe harbor provision of Rule 11(c)(2). In reply, the bank argues, correctly, that Rule 11 does not supplant the court's authority under § 1927 or pursuant to its inherent power and that the safe harbor procedure under Rule 11 may not be engrafted onto a request for fees that is asserted under § 1927 or pursuant to the court's inherent power.

The bank aptly summarizes its request for fee shifting as follows:

> For these reasons, First United requests an Order from the Court that First United is entitled to its attorneys' fees and costs joint and severally against the Individuals, for its fees incurred in responding to the Motion to Add Necessary Party, Motion to Amend, and Motion to Alter or Amend Judgment. These filings merely reasserted the same lines of arguments that were advanced prior to the Court's September 12, 2022 Order, which dismissed the Individuals' claims. Moreover, none of the arguments advanced in these filings actually addressed or acknowledged the applicability of Regulation B's definition of "applicant" or that guarantors lack standing to pursue § 1981 claims where their harm is derivative of the corporation and not unique to themselves. As such, First United should be awarded its attorneys' fees and costs incurred in defending against the same.

Doc. no. 49, at 11.

The bank's factual summary is correct. For that reason, it is tempting to grant the motion and to require the individuals to pay the bank's attorneys' fees. But, *at least for now*, the court declines to do so.

To start with an inconvenient truth (from the plaintiffs' perspective), plaintiffs have, with noticeable persistence, pursued claims which are factually and legally without merit. They have done so even to the point of taking inconsistent factual positions. That course of conduct, in and of itself, could quite easily provide a sound basis for requiring the plaintiffs to pay the bank's attorneys' fees. But, bearing all of that in mind, the court will, *at least for now*, withhold the relief sought by the bank. In so doing, the court is bending over backward to give plaintiffs, as *pro se*

litigants unversed in the law, some leeway (which they may or may not deserve) to come to the understanding that to be legally and factually wrong is one thing, but to be *persistently* wrong, and to aggravate the situation by taking contradictory factual positions, is quite another.  In its consideration of this motion, the court also indulges the notion that from time to time (and within the outer bounds of reason), commercial banks must, in exercising the special powers and special trust reposed in them by the state, understand that dealing with wrong-headed would-be loan customers (in this case, would-be guarantors) sometimes goes with the territory.

Further attempts by these plaintiffs, on these facts, to assert their meritless claims against the bank will remove all doubt (if there is any room for doubt to begin with) as to whether they are proceeding unreasonably and vexatiously–and prejudicially to the legitimate interests of the bank–by abusing the processes of the court.

The Defendant's Motion for Attorney Fees, doc. no. 49, is **DENIED**, without prejudice to reassertion if plaintiffs engage in further conduct such as that described in this order.

DATED this 17th day of March, 2023.

                                                                      /s/ Stephen P. Friot
                                                                      STEPHEN P. FRIOT
                                                                      UNITED STATES DISTRICT JUDGE

22-0185p014.docx