FILED
United States Court of Appeals
Tenth Circuit

February 20, 2024

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

MARQUISE MILLER; DEKOVEN RIGGINS; RICHARD OSEI; CHAD TYLER,

    Plaintiffs - Appellants,

and

CDMR, LLC, an Oklahoma limited liability company,

    Plaintiff,

v.

FIRST UNITED BANK AND TRUST COMPANY, an Oklahoma banking corporation, d/b/a First United Bank,

    Defendant - Appellee.

No. 23-6050
(D.C. No. 5:22-CV-00185-F)
(W.D. Okla.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **HARTZ**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Marquise Miller, Dekoven Riggins, Richard Osei, and Chad Tyler (together, Individuals), appearing pro se, appeal the district court's judgment dismissing their claims of credit discrimination. They also appeal the district court's denial of their motion to alter or amend the judgment. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

The Individuals filed a pro se complaint alleging credit discrimination claims against First United Bank and Trust Co. (First United) under the Equal Credit Opportunity Act (ECOA), *see* 15 U.S.C. §1691(a); the Fair Housing Act (FHA), *see* 42 U.S.C. §§ 3604–3605; and 42 U.S.C. § 1981.[1] The claims arose from First United's denial of a loan application to finance the purchase of an apartment complex. The Individuals, who are Black, alleged that they applied for financing through First United, that they also were to be guarantors of the loan, and that First United denied the application based on their race. They sought damages.

First United filed a motion to dismiss the FHA claim. The district court granted the motion and dismissed the FHA claim without prejudice, reasoning that the FHA did not apply under the alleged circumstances. However, the court gave the Individuals leave to amend their complaint.

---

[1] In relevant part, § 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." § 1981(a). It also protects those rights "against impairment by nongovernmental discrimination." § 1981(c).

2

An attorney then entered an appearance on behalf of the Individuals and filed a motion for leave to add CDMR, LLC as a necessary party-plaintiff because "the loan application guaranteed by the four individual Plaintiffs [was] directed to and made by . . . CDMR, . . . which is owned by the four individual Plaintiffs."  R. at 80.  The motion also sought permission to file a first amended complaint (FAC).  The FAC added CDMR as a plaintiff, asserted the same three claims as the original complaint, and sought damages.  The court granted the motion.

Next, First United filed a motion under Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of Plaintiffs' FHA and ECOA claims and the Individuals' § 1981 claim.[2]  The court granted the motion as to Plaintiffs' FHA claim, dismissing it without prejudice.  On appeal, the Individuals[3] do not challenge this ruling, so we omit further discussion of it.

The district court also granted the motion as to the Individuals' ECOA claim, dismissing it without prejudice.  The court concluded that the Individuals failed to establish their right to sue under the ECOA because the ECOA prohibits racial discrimination against loan *applicants*, but they alleged they were to be personal *guarantors* of the loan.  The court also observed that although 12 C.F.R. § 1002.2(e) defines "applicant" to include a guarantor, it does so only for purposes of 12 C.F.R. § 1002.7(d).  Section 1002.7(d) is part of the ECOA's implementing regulation,

---

[2] We refer to CDMR and the Individuals together as "Plaintiffs."

[3] CDMR is not an appellant.

3

Regulation B, and prohibits requiring spouses to guarantee loans (referred to as the "signature rules" or the "spouse-guarantor rules"). *See Riggs Nat'l Bank of Washington, D.C. v. Linch*, 36 F.3d 370, 374 (4th Cir. 1994) ("It is well-established that the ECOA and its implementing regulations prohibit a creditor from requiring a spouse's signature on a note when the applicant individually qualifies for the requested credit." (citations omitted)). However, the court determined that there were no allegations that First United violated the signature rules. But with respect to CDMR, the court concluded that the FAC alleged sufficient facts to establish a prima facie ECOA claim. The court therefore dismissed only the Individuals' ECOA claim.

Turning to the Individuals' § 1981 claim, the district court observed that "'a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes "to make and enforce."'" R. at 238 (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479–80 (2006), which quoted § 1981). Applying that rule, the court concluded the Individuals lacked statutory standing because they had not identified "any injuries flowing from any alleged racially motivated breach of [their] contractual relationship with [First United]," but only "injuries flowing from the allegedly racially motivated breach of CDMR's proposed contractual relationship with [First United]." *Id.* The court therefore dismissed the Individuals' § 1981 claim.

The court's rulings left only CDMR's ECOA and § 1981 claims.

The Individuals then filed a pro se "Motion to Add Necessary Party," seeking to add themselves back into the case as to the ECOA claim. *See* R. at 240–42. While that

4

motion was pending, Plaintiffs' counsel filed a motion to withdraw. The district court granted the motion to withdraw and gave CDMR a month to secure an entry of appearance by new counsel. Soon thereafter, the Individuals filed a pro se motion for leave to file a second amended complaint (SAC) to add allegations that they were "co-borrowers[] along with CDMR." R. at 273.

The district court denied the Individuals' pending motions. The court construed the Motion to Add Necessary Party as a motion for reconsideration of its dismissal of the Individuals' ECOA claim and found no reason to reconsider its earlier ruling. The court rejected the Individuals' reliance on *Citgo Petroleum Corp. v. Bulk Petroleum Corp.*, No. 08-CV-654, 2010 WL 3931496 (N.D. Okla. Oct. 5, 2010) (unpublished), which concluded that the ECOA's protections against discrimination extended to a guarantor who was required to sign a spousal guaranty, *see id.* at *7–9. After explaining that it was not bound by the decision of other federal district courts, the district court distinguished *Citgo Petroleum* because it involved an alleged violation of the signature rules, whereas there was no such alleged violation in the instant case.

Turning to the motion to amend, the district court concluded that the Individuals could not seek amendment because Federal Rule of Civil Procedure 15(a)(1) provides that a "party" may be granted leave to amend, but they were no longer parties to the case—the court had denied reconsideration of its dismissal of their ECOA claim, and they had not sought reconsideration of their FHA or § 1981 claims. In the alternative, the court denied leave to amend because the proposed SAC appeared to be offered in bad faith given an irreconcilable factual contradiction between the FAC and the SAC. The

5

FAC, which was "filed by retained counsel," alleged that the Individuals, "'through their business entity, CDMR,'" had "applied for financing through First United, and that the individual Plaintiffs 'were personal guarantors of the loan.'" R. at 343 (quoting R. at 112, ¶ 6, and 116, ¶ 33). In contrast, the proposed SAC alleged that the Individuals were "'co-borrowers' and that they, 'along with CDMR,'" had "'applied for financing' through First United." R. at 343 (apparently quoting R. at 279, ¶ 7). The court found it "clear . . . that the proposed [SAC] is making factual allegations that the individual plaintiffs would have been aware of when the [FAC] was filed, but they did not choose to advance those factual allegations until after the court dismissed their claims." R. at 343–44. Thus, the court denied the motion to amend.

By separate order on the same day, the district court dismissed CDMR's FAC and action without prejudice because CDMR did not secure an entry of new counsel by the court's deadline. R. at 345–46. The court also entered a separate judgment.

A week later, the Individuals filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). They asked the court "to include them in the lawsuit as necessary parties" and "to allow them to amend their complaint to add all relevant causes of action." R. at 401. In support of those requests, they advanced multiple theories regarding their standing to bring their ECOA and § 1981 claims as personal guarantors or co-borrowers. The district court construed the motion as proposing a need to correct clear error and denied it. Although the court concluded that the arguments and authorities could have been raised in prior briefing, it nevertheless addressed the merits and concluded that the Individuals had not demonstrated clear error.

6

We postpone further discussion of the district court's ruling until the relevant sections of our analysis.

The Individuals filed a timely notice of appeal.

## II.  DISCUSSION

A.    **Standards of review**

The Individuals' appellate arguments chiefly concern (and largely without clearly discerning between) the district court's orders denying the Motion to Add Necessary Parties (construed as a motion for reconsideration of the dismissal of the Individuals' ECOA claim), the motion for leave to file the SAC, and the Rule 59(e) motion.  We review those orders for an abuse of discretion.  *See Roberts v. Winder*, 16 F.4th 1367, 1385 (10th Cir. 2021) (motion for reconsideration); *Jensen v. W. Jordan City*, 968 F.3d 1187, 1201 (10th Cir. 2020) (motion for leave to amend); *Pueblo of Jemez v. United States*, 63 F.4th 881, 889 (10th Cir. 2023) (Rule 59(e) motion).  A district court abuses its discretion if its ruling "was arbitrary, capricious, whimsical, or manifestly unreasonable," or the court made "an error of law." *Pueblo of Jemez*, 63 F.4th at 889 (internal quotation marks omitted).

To the extent the Individuals' appellate arguments implicate the district court's Rule 12(b)(6) dismissal of their ECOA and § 1981 claims as set out in the FAC, our review is de novo.  *See Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014).  "To survive a [Rule 12(b)(6)] motion to dismiss, a plaintiff must plead facts sufficient to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted).  And "we must accept all the well-pleaded allegations of the complaint

7

as true and must construe them in the light most favorable to the plaintiff." *Id.* (internal quotation marks omitted).

We afford the Individuals' pro se filings a liberal construction, but we may not serve as their advocates. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

**B.      Arguments concerning ECOA claim**

**1. Guarantor theory**

The Individuals first argue that, as guarantors of the loan to CDMR, they had statutory standing to bring their ECOA claim. We disagree.

In relevant part, the ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race." 15 U.S.C. § 1691(a)(1). It defines "[t]he term 'applicant'" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit." § 1691a(b).[4] The plain language of the statute does not include guarantors. However, Regulation B's definition of "applicant" includes a guarantor, but only for purposes of the signature rules: "Applicant means any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit. *For purposes of [12 C.F.R.] § 1002.7(d)*, the term includes *guarantors*, sureties, endorsers, and similar parties." 12 C.F.R. § 1002.2(e) (emphasis added).

---

[4] "The term 'person' means a natural person, a corporation, government or governmental subdivision or agency, trust, estate, partnership, cooperative, or association." 15 U.S.C. § 1691a(f).

8

Section 1002.2(e)'s plain language allows a guarantor to be considered an applicant for one limited purpose—violation of the signature rules. And, as the district court found, the Individuals never alleged a violation of the signature rules. Thus, the district court concluded that they lacked statutory standing.

In contesting the district court's handling of their ECOA claim, the Individuals lean heavily on several statements in *RL BB Acquisitions, LLC v. Bridgemill Commons Development Group*, 754 F.3d 380 (6th Cir. 2014) (*RL BB*), which they relied on in their Rule 59(e) motion. In that case, the Sixth Circuit concluded that the statutory definition of "applicant" is "ambiguous because it could be read to include third parties who do not initiate an application for credit, and who do not seek credit for themselves—a category that includes guarantors." *Id.* at 384–85. The court saw "no reason to artificially limit the possible meanings of 'applicant'" because the "ECOA prohibits discrimination 'with respect to *any aspect* of a credit transaction,'" *id.* at 385 (quoting 15 U.S.C. § 1691(a)) (emphasis in *RL BB*), and because the ECOA "has broad remedial goals," *id.* (internal quotation marks omitted).

The Individuals argue that we should extend these broad statements beyond the specific circumstances of *RL BB* to conclude they have ECOA standing based on their proposed role as guarantors of the loan CDMR applied for. We decline to do so because this argument rests on an incomplete reading of the Sixth Circuit's opinion and requires us to use a disfavored canon of statutory construction.

In *RL BB*, the Sixth Circuit considered whether the regulatory definition of applicant was "entitled to deference such that guarantors may raise ECOA claims." *Id.*

9

at 384. To answer that question, the court applied the two-step inquiry set out in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984). The court recognized that at *Chevron*'s first step, the inquiry is whether the statute is silent or ambiguous on the relevant issue. *RL BB*, 754 F.3d at 384. The court concluded that the statutory definition was ambiguous such that it could include guarantors. *See id.* at 384–85. At *Chevron*'s second step, the court asked whether the regulatory definition was a permissible construction of the statutory definition. *See id.* at 385. The court determined that it was, but only to the extent of asserting violations of the signature rules. *See id.* at 385–86. Importantly, the Sixth Circuit observed that treating guarantors as applicants for the limited purpose of the signature rules was "a result that the regulators reached with caution. When the Federal Reserve began the process of amending Regulation B to cover guarantors, it initially proposed that guarantors would be deemed applicants throughout the regulation." *Id.* at 385 (citing 50 Fed. Reg. 48018, 48020 (Nov. 20, 1985) (Official Staff Commentary)).[5] "This definition would have allowed guarantors to sue for violations of any portion of Regulation B. But the final version limited the definition of applicant so it would only apply to the spouse-guarantor rule." *Id.* at 386. "The Federal Reserve reached this conclusion 'in response to the concerns of industry commenters who believed that the

---

[5] The 1985 Official Staff Commentary cited in *RL BB* concerned 12 C.F.R. §§ 202.2(e) and 202.7(d). The regulations at issue here, 12 C.F.R. §§ 1002.2(e) and 1002.7(d), were not promulgated until 2011. *See* 76 Fed. Reg. 79442-01, 79442, 79445 (Dec. 21, 2011). However, because the two regulatory definitions of "applicant" are materially identical, we may apply the 1985 Official Staff Commentary to our interpretation of § 1002.2(e).

unlimited inclusion of guarantors and similar parties in the definition might subject creditors to a risk of liability for technical violations of various provisions of the regulation.'" *Id.* (quoting 50 Fed. Reg. at 48,020).

For our purposes, we may assume, without deciding, that *RL BB* correctly determined that the statutory definition of "applicant" is ambiguous and that the inclusion of guarantors in the regulatory definition of applicant is entitled to deference.[6] But even so, the regulatory definition brings guarantors within the meaning of "applicant" only for purposes of the signature rules, and the Individuals did not allege any violation of those rules.

Furthermore, even assuming the ECOA has "broad remedial goals," *id.* at 385 (internal quotation marks omitted), we may not use that purpose to employ a liberal construction of the statute or the regulation "as a substitute for a conclusion grounded in . . . text and structure." *CTS Corp. v. Waldburger*, 573 U.S. 1, 12 (2014).[7] The text and structure here show that the ECOA and its implementing regulations define an applicant as including guarantors only for purposes of the signature rules. That conclusion is

---

[6] Other circuit courts that have considered the issue have reached the opposite conclusion and, consequently, have held that Regulation B's inclusion of guarantors in the definition of applicant is not entitled to *Chevron* deference. *See Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1193 (11th Cir. 2019); *Hawkins v. Cmty. Bank of Raymore*, 761 F.3d 937, 942 (8th Cir. 2014), *aff'd by an equally divided court*, 577 U.S. 495 (2016); *Moran Foods, Inc. v. Mid-Atl. Mkt. Dev. Co.*, 476 F.3d 436, 441 (7th Cir. 2007)). We do not weigh in on this circuit split.

[7] Canons of statutory construction are equally applicable to the interpretation of regulations. *See Time Warner Ent. Co. v. Everest Midwest Licensee, L.L.C.*, 381 F.3d 1039, 1050 (10th Cir. 2004).

11

reinforced by evidence that the Federal Reserve rejected the idea of allowing guarantors to be considered applicants for all portions of Regulation B (and, by extension, all portions of the ECOA).[8]

The Individuals also point out that the regulatory definition of applicant "includes any person who is or may become contractually liable regarding an extension of credit." 12 C.F.R. § 1002.2(e). They argue that this phrase includes guarantors because a guarantor may become contractually liable for repayment of a loan by, for example, intervening in the contract to make payments to avert a default. *See* Aplt. Reply Br. at 3–6. We disagree. "[O]ne of the most basic interpretive canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *United States v. Dawes (In re Dawes)*, 652 F.3d 1236, 1242 (10th Cir. 2011) (internal quotation marks omitted). Crediting the Individuals' reading of § 1002.2(e)'s first sentence would render the next sentence of the definition superfluous; if guarantors are applicants because they "may become contractually liable regarding an extension of credit," there would have been no need to specify that guarantors are applicants for purposes of the signature rules. Furthermore, as we have already explained, when it revised the regulatory definition of applicant, the Federal Reserve clearly intended guarantors to fall within that definition only for purposes of enforcing the signature rules.

---

[8] For the same reasons, the Individuals' continued reliance on *Citgo Petroleum Corp. v. Bulk Petroleum Corp.*, No. 08-CV-654, 2010 WL 3931496 (N.D. Okla. Oct. 5, 2010) (unpublished), is misplaced.

### 2. Principal borrower theory

The Individuals next argue that they were the principal borrowers for ECOA purposes because CDMR had no credit or financial history, which they claim this court requires a borrower to have under *United States v. Gregory*, 54 F.4th 1183 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1756 (2023). *Gregory*, however, was a direct criminal appeal involving a challenge to the sufficiency of the evidence to sustain a federal bank fraud conviction. In that context we discussed a lender's consideration of one "type[] of information banks evaluate and expect to receive when they are asked to consider a loan," namely, "the character of the borrowers." *Id.* at 1193 (emphasis omitted). We observed that "[l]enders need to know the character of the *borrower and* those *serving as guarantors* on the loan." *Id.* at 1194 (emphasis added). Even if we might import *that* principle into an ECOA analysis, it does not equate a guarantor to a borrower (or, for ECOA purposes, an applicant) when the borrower (applicant) lacks a credit or financial history. To the contrary, it only heightens the distinction between a borrower (applicant) and a guarantor. The Individuals' reliance on *Gregory*, therefore, is misplaced.

### 3. Co-borrower theory

The Individuals next rely on several general principles concerning sureties and guarantors—that guarantors have the same rights as sureties, including the right to proceed against a creditor; and that like borrowers, guarantors are directly responsible to the creditor. From these principles they argue that although a guarantor does not become the principal borrower, he can act in the principal borrower's place "vicariously in his individual capacity," Aplt. Opening Br. at 14 (italics omitted), which they apparently

13

conclude renders them co-borrowers. None of the cases they rely on for support, however, are ECOA cases; they instead concern state or common law principles and causes of action. It is true that we must adopt a common-law rule of decision or incorporate state law where a question involving "a federal claim . . . cannot be answered by statutory interpretation." *Ellis v. Liberty Life Assurance Co. of Bos.*, 958 F.3d 1271, 1280 (10th Cir. 2020). But here we are satisfied that the ECOA and its implementing regulations adequately answer the question before us. We therefore reject this line of argument.

In further support of their theory that their submission of their personal financial information rendered them co-borrowers, the Individuals rely on *Durdin v. Cheyenne Mountain Bank*, 98 P.3d 899 (Colo. App. 2004).[9] In *Durdin*, the Colorado Court of Appeals considered whether Durdin, the sole shareholder and owner of a corporation called Carefree, had standing to pursue an ECOA claim involving a bank's allegedly untimely notice of an adverse decision on a loan application. *See id.* at 901. Because Durdin had not brought a claim under the signature rules, the court concluded that he would lack standing if he had "alleged that his status in submitting the application was simply as a potential guarantor of Carefree's loan." *Id.* at 902. The court then determined that Durdin was both a guarantor and a co-borrower because, among other things, he had "submitted the loan application to [the bank] not simply as a guarantor of

---

[9] The Individuals discuss *Durdin* as part of their challenge to the district court's refusal to allow them to file the SAC. But analytically, *Durdin* also bears on their theory that they were co-borrowers. We therefore examine it as part of their co-borrower theory.

14

Carefree, but also as a coborrower"; there was evidence "that [the bank] ordered a credit report on him and requested his personal financial records, personal income tax returns, and personal financial statement"; and he had "specifically requested in writing that [the bank] consider the loan as a personal one secured by his assets." *Id.* at 903.

The district court rejected the Individuals' reliance on *Durdin* in its order denying their Rule 59(e) motion. The court distinguished *Durdin* because the Individuals "did not allege or proffer any facts that they specifically requested in writing that First United consider the loan to purchase the apartment complex as a personal one to them." R. at 427. In support, the district court relied on "Paragraph 7(d)(1) of the Official Staff Interpretations to Regulation B." *Id.* That paragraph states: "The term 'joint applicant' refers to someone who applies contemporaneously with the applicant for shared or joint credit. It does not refer to someone whose signature is required by the creditor as a condition for granting the credit requested." 12 C.F.R. Pt. 1002, Supp. I., ¶ 7(d)(1).2. It also states that "[a] person's intent to be a joint applicant must be evidenced at the time of the application." *Id.*, ¶ 7(d)(1).3.

The district court determined that the record facts at the time it denied the Motion to Add Necessary Parties (treated as a motion for reconsideration of the court's dismissal of the Individuals' ECOA claim) did not show that the Individuals had "requested in writing to First United that the commercial loan be a personal loan for them or that they were applying for the loan individually as well as on behalf of CDMR." R. at 427. The court explained that the then-existing record facts, as set out in the counseled motion to add CDMR as a plaintiff, the FAC, and the Motion to Add Necessary Parties, showed just

15

the opposite—the Individuals were proposed personal guarantors of the loan, CDMR made the loan application, and CDMR was to purchase the complex, as indicated on the purchase contract. *Id.* The court afforded no significance to the fact that the Individuals had supplied their personal financial information: "[T]hat First United required and examined the financial information of [the Individuals], who were the proposed personal guarantors of the loan, was not unusual since the bank could extend credit 'solely on the financial strength of' the guarantors." *Id.* at 427–28 (quoting 12 C.F.R. § 217.122(b)(2)(i)).

In challenging the district court's treatment of their *Durdin* argument, the Individuals fail to address the key distinguishing fact—the absence of any allegations that they had submitted a loan application as co-borrowers (other than in the SAC, the rejection of which, as we later explain, was not an abuse of discretion) or had specifically requested in writing that First United consider the loan a personal one secured by their assets. This distinction is fatal to their reliance on *Durdin*.

C.  **Arguments concerning § 1981 claim**

As the district court observed, the Supreme Court has held "that a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'" *Domino's Pizza, Inc.*, 546 U.S. at 479–80 (quoting § 1981). To do that, "[§] 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." *Id.* at 480.

16

The Individuals contest the district court's rulings that they lacked standing to pursue their § 1981 claim. First United argues that, through inadequate briefing, the Individuals have waived review of those rulings. We disagree. Liberally construed, part VI of the opening brief adequately advances an argument concerning the district court's dismissal of the Individuals' § 1981 claim. That argument, however, lacks merit.

The Individuals' § 1981 argument rests on three premises: a guarantor can (1) be sued individually, (2) act in place of the principal borrower, and (3) sue a creditor directly. From those premises, they conclude that the district court erred in dismissing their § 1981 claim on the ground that they had identified injuries flowing only from an allegedly racially motivated breach of CDMR's proposed contractual relationship. None of the cases they rely on for this argument, however, involved a § 1981 claim. And in the § 1981 context, we have "reject[ed] the premise that a stockholder's status as a guarantor gives the stockholder status to assert an individual [§ 1981] claim against a third party where that harm is derivative of that suffered by the corporation." *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1073 (10th Cir. 2002). Here, the Individuals have not shown that any harm they experienced is *not* derivative of any harm CDMR may have sustained from First United's allegedly discriminatory denial of CDMR's loan application. They have therefore failed to show reversible error in the district court's dismissal of their § 1981 claim.

D.   **Arguments concerning denial of leave to file the SAC**

As discussed earlier, the district court denied the Individuals' motion for leave to file the SAC based on the court's view that the SAC was proposed in bad faith: In the

17

FAC, the Individuals alleged that they were personal guarantors, but in the proposed SAC they alleged they were co-borrowers—a fact, the district court found, that they would have been well aware of when they filed the FAC.

The Individuals argue that allegations in their original complaint related to their submission of financial information to First United in order to get the loan, combined with the lack of any allegations that CDMR had to submit any financial information to qualify for the loan, implied that they were borrowers or co-borrowers, especially in light of *Durdin*. They also contend that their original pro se complaint came close to stating a claim and that the FAC related back to the original complaint under Federal Rule of Civil Procedure 15(c)(1). They therefore conclude that the district court should have allowed them to file the SAC.

The first problem with this line of argument is that, under Rule 15(c)(1), an "amended complaint, as the operative complaint, supersedes the original complaint's *allegations*, but not its *timing*." *May v. Segovia*, 929 F.3d 1223, 1229 (10th Cir. 2019). Thus, the FAC, which was filed by counsel, related back for purposes such as a statute of limitations, *see id.*, but it superseded the original complaint's allegations, thus leaving the district court to compare only the FAC and the SAC. And the FAC alleged that CDMR was "wholly owned and operated by the four individual Plaintiffs" and that they applied for the loan "through . . . CDMR." R. at 112, ¶ 5–6. It also alleged that the Individuals "were personal guarantors of the loan." R. at 116, ¶ 33; *see also* R. at 117, ¶ 49 (same). These allegations were clearly at odds with the allegations in the SAC that the Individuals were co-borrowers. The second problem with this argument is that, for the same reasons

18

we concluded that *Durdin* is distinguishable in the context of the Individuals' ECOA claim, *see supra*, Part II.B.3., it fails to aid them here.

Given that the Individuals did not seek to file the SAC until after the district court had dismissed their claims, we see no abuse of discretion in the district court's finding that the competing, contrary allegations in the FAC and the SAC were indicative of bad-faith because the Individuals would have been aware, when the FAC was filed, whether they were co-borrowers. *See Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998) (finding no abuse of discretion in refusal to permit amendment where "amended complaint proposed new theories that [the plaintiff] did not choose to advance until after his primary theories had been dismissed," noting that "we do not favor permitting a party to attempt to salvage a lost case by untimely suggestion of new theories of recovery, especially after the trial judge has already expressed adverse rulings" (brackets and internal quotation marks omitted)).

### III. CONCLUSION

We affirm the district court's judgment and its order denying the Individuals' Rule 59(e) motion.

                                          Entered for the Court

                                          Gregory A. Phillips
                                          Circuit Judge

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

February 20, 2024

Marquise Miller
1505 NW 179th Terrace
Edmond, OK 73012

Richard Osei
5421 NE Grand Boulevard
Oklahoma City, OK 73111

Dekoven Riggins
5200 Strait Drive
Oklahoma City, OK 73121

Chad Tyler
16930 SW 27th Street
El Reno, OK 73036

**RE:** 23-6050, Miller, et al v. First United Bank and Trust
Dist/Ag docket: 5:22-CV-00185-F

Dear Appellants:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc:    Spencer F. Smith
       Gatlin Cy Squires

CMW/djd